891 So.2d 398 (2003)
Holly WOOD
v.
STATE of Alabama.
CR-01-0700.
Court of Criminal Appeals of Alabama.
April 25, 2003.
Rehearing Denied May 23, 2003.
Opinion Affirming on Return to Remand January 6, 2004.
Rehearing Denied February 20, 2004.
Certiorari Denied May 21, 2004.
*401 Joel L. Williams, Troy; John J.P. Howley and Brady W. Mills, New York, New York; and Jessica L. Michaelson, New York, New York, for appellant.
William H. Pryor, Jr., atty. gen., and Henry M. Johnson, asst. atty. gen., for appellee.
Alabama Supreme Court 1030817.
BASCHAB, Judge.
On October 20, 1994, the appellant, Holly Wood, was convicted of the capital offense *402 of burglary-murder. See § 13A-5-40(a)(4), Ala.Code 1975. By a vote of 10-2, the jury recommended that he be sentenced to death. On December 9, 1994, the trial court sentenced him to death. This court and the Alabama Supreme Court affirmed the appellant's conviction on direct appeal, see Wood v. State, 715 So.2d 812 (Ala.Crim.App.1996), aff'd, 715 So.2d 819 (Ala.1998), and the United States Supreme Court denied the appellant's petition for certiorari review, see Wood v. Alabama, 525 U.S. 1042, 119 S.Ct. 594, 142 L.Ed.2d 536 (1998). The relevant facts of the case are set forth in this court's opinion on direct appeal. This court issued a certificate of judgment on June 9, 1998.
On December 1, 1999, the appellant, through counsel, filed a Rule 32 petition, challenging his conviction and sentence of death. He filed amended petitions on or about September 15, 2000, and July 2, 2001. The State responded and moved to dismiss many of the claims. The circuit court dismissed some of the claims and denied some of the claims after conducting an evidentiary hearing. This appeal followed.
After this case was orally argued and submitted, the United States Supreme Court released its decision in Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002). In Atkins, the Supreme Court held:
"We are not persuaded that the execution of mentally retarded criminals will measurably advance the deterrent or the retributive purpose of the death penalty. Construing and applying the Eighth Amendment in the light of our `evolving standards of decency,' we therefore conclude that such punishment is excessive and that the Constitution `places a substantive restriction on the State's power to take the life' of a mentally retarded offender."
536 U.S. at 321, 122 S.Ct. at 2252. In his petitions and in his briefs to this court, the appellant argues that he is mentally retarded, that his trial attorneys rendered ineffective assistance because they did not develop and present evidence that he is mentally retarded, and that the application of the death penalty to those who are mentally retarded is unconstitutional. Therefore, we requested that he and the attorney general brief the applicability of Atkins to this case. The parties submitted briefs in support of their respective positions, and we considered those briefs in reviewing this case.
In light of the Supreme Court's decision in Atkins, we must remand this case to the circuit court to allow that court to determine whether the appellant is mentally retarded and whether his trial attorneys rendered ineffective assistance by not developing and presenting evidence that he is mentally retarded. Because the appellant raises several arguments that are related to issues that may arise on remand, we address those arguments in this opinion.[1]

I.
The appellant argues that the circuit court erred because, during the evidentiary hearing on his petition, it did not allow him to present expert psychological testimony to support his contentions that he is mentally retarded and that his trial attorneys rendered ineffective assistance during his trial because they did not develop and present evidence that he is mentally retarded.

*403 A.
First, the appellant contends that the circuit court improperly refused to allow Dr. Faye E. Sultan, a clinical psychologist who had examined him, to testify as an expert witness because she was not licensed to practice in Alabama. On August 9, 2001, the State filed a "Motion in Limine to Exclude the Testimony of Dr. Faye Sultan." In that motion, the State argued that Dr. Sultan had not been licensed by the Alabama Board of Examiners in Psychology to practice psychology in the State of Alabama; that Dr. Sultan had practiced as a psychologist in the State of Alabama, as defined in § 34-26-1(b)(1), Ala.Code 1975, because she had conducted testing in the state and had been named to testify as an expert witness in the case by the defense; and that a person who is not licensed in this state and who holds himself or herself out as a psychologist and practices in this state is guilty of a Class C misdemeanor, as set forth in § 34-26-42, Ala.Code 1975. The next day, the circuit court entered the following order:
"Having considered the arguments presented by Respondent, the Court hereby ORDERS that Dr. Faye E. Sultan shall be required to establish that she is licensed to practice psychology in the State of Alabama before she will be allowed to testify regarding any psychological issues in this matter which were derived from the administering of tests in Alabama or through an interview with Petitioner, who is detained within the borders of the State of Alabama."
(C.R. 941.) The appellant filed a motion to reconsider, which the circuit court summarily denied. Finally, when this issue was raised at the conclusion of the evidentiary hearing on August 22, 2001, the circuit court explained:
"But I'm convinced that if I allow Dr. Sultan to testify in this court that I would  as stated in The State's motion, I would be facilitating the commission of a crime myself. I'm not going to do that."
(R. 142-43.)
Initially, we question whether Dr. Sultan actually violated §§ 34-26-1(b)(1) and 34-26-42, Ala.Code 1975. Section 34-26-1(b)(1), Ala.Code 1975, provides:
"A person practices as a `psychologist' within the meaning of this chapter when he or she holds himself or herself out to be a psychologist or renders to individuals or to the public for remuneration any service involving the application of recognized principles, methods, and procedures of the science and profession of psychology, such as interviewing or administering and interpreting tests of mental abilities, aptitudes, interests, and personality characteristics for such purposes as psychological evaluation or for such purposes as overall personality appraisal or classification, or treatment. The practice of psychologists specifically includes the use of projective assessment techniques, the diagnosis of mental disorders, and psychotherapy."
(Emphasis added.) Because Dr. Sultan evaluated the appellant for his attorneys for use in court proceedings, it is not entirely clear that her actions constituted practicing as a psychologist as defined in this section. Further, § 34-26-42, Ala.Code 1975, provides:
"If any person holds himself or herself out to the public as being engaged in practice as a psychologist or psychological technician, such as clinical, counseling, school, or combined professional-scientific psychology, and does not then possess in full force and virtue a valid license to practice as a psychologist or psychological technician under this chapter, he or she shall be deemed guilty of a Class C misdemeanor and, upon conviction, *404 shall be fined not less than one hundred dollars ($100) nor more than five hundred dollars ($500). Nothing in this chapter shall be construed to limit the professional pursuits of teachers in recognized public and private schools, clergymen, practitioners of medicine, social workers and guidance counselors from full performance of their professional duties. However, in such performance any title shall be in accord with this chapter. Students of psychology, psychological interns, or other persons preparing for the profession of psychology may perform as a part of their training the functions specified in this chapter, but only under qualified supervision. Use of psychological techniques by business and industrial organizations for employment placement, evaluation, promotion, or job adjustment of their own officers or employees or by employment agencies for the evaluation of their own clients prior to recommendations for employment is also specifically allowed. However, no industrial or business firm or corporation may sell or offer to the public or to other firms or corporations for remuneration any psychological services as specified in this chapter unless the services are performed or supervised by individuals duly and appropriately licensed under this chapter."
(Emphasis added.) Because it is not entirely clear from the record that Dr. Sultan held "herself out to the public as being engaged in practice as a psychologist," we question whether she violated this section.
Moreover, the Alabama Court of Civil Appeals has held that the fact that an expert is not licensed to practice his or her specialty in Alabama does not prevent him or her from testifying as an expert witness in Alabama. In Mitchell v. Mitchell, 830 So.2d 755, 757-59 (Ala.Civ.App.2002), the court stated:
"After reviewing the scant record in this case, we conclude that the dispositive issue presented on appeal is whether the trial court improperly denied the expert testimony of Dr. Sher Schwartz, a psychologist licensed in Georgia, because she was not licensed to practice in Alabama. . . .
". . . .
"The question we must answer is whether a psychologist, licensed in another state, may be prohibited from testifying as an expert witness solely on the grounds that she is not licensed in Alabama.
"Rule 702, Ala. R. Evid., provides:
"`If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.'
"`"[W]hether a witness is qualified to testify as an expert on a particular subject is largely within the discretion of the trial court, and that court's judgment on that question will not be disturbed absent an abuse of discretion."' Knapp v. Wilkins, 786 So.2d 457, 461 (Ala.2000), quoting Brown v. Lawrence, 632 So.2d 462, 464 (Ala.1994).
"The husband argues in his brief that he objected to Dr. Schwartz's testimony because practicing psychology in Alabama without a license is a crime, pursuant to § 34-26-42. While he is correct that practicing psychology without a license is a misdemeanor offense, there is no evidence that Dr. Schwartz was practicing psychology in Alabama. She is licensed in Georgia and has an office in Columbus, Georgia. At the time the child was seeing Dr. Schwartz, the *405 mother and the child lived in Phenix City, Alabama, which is located on the Alabama state line, adjacent to Columbus, Georgia.
"Section 34-26-1(b)(1) provides:
"`A person practices as a "psychologist" within the meaning of this chapter when he or she holds himself or herself out to be a psychologist or renders to individuals or to the public for remuneration any service involving the application of recognized principles, methods, and procedures of the science and profession of psychology, such as interviewing or administering and interpreting tests of mental abilities, aptitudes, interests, and personality characteristics for such purposes as psychological evaluation or for such purposes as overall personality appraisal or classification, or treatment. The practice of psychologists specifically includes the use of projective assessment techniques, the diagnosis of mental disorders, and psychotherapy.'
"We do not conclude from our reading of § 34-26-1 that the Legislature intended that psychologists be licensed in Alabama as a prerequisite to their giving expert testimony. Rather, we believe the intent of the Legislature in adopting § 34-26-1 and § 34-26-42  punishing those who practice without a license  is to prevent unqualified persons from performing the functions of a psychologist within this State. Nothing in § 34-26-1 would lead one to conclude that testifying is a function of practicing psychology. Furthermore, if we carried the husband's argument to the extreme, any expert witness whose field of expertise is subject to licensing in Alabama would have to obtain an Alabama license before offering expert testimony. See Goodwin v. Camp, 852 S.W.2d 698 (Tex.App.1993) (out-of-state chiropractor who was not licensed in Texas could testify, and his testimony did not constitute the practice of chiropractic medicine, which required a Texas license). Cf. Coe v. State, 17 S.W.3d 193 (Tenn.2000) (out-of-state psychologist's performance of forensic evaluation and testimony in connection with proceeding to determine death-row inmate's competency to be executed did not constitute the practice of psychology so as to require a temporary license under Tennessee law).
"The trial court erred in not admitting the testimony of Dr. Schwartz solely on the ground that she was not licensed in Alabama."
(Footnote omitted.)
Years before, in Federal Mogul Corp. v. Universal Construction Co., 376 So.2d 716, 719-22 (Ala.Civ.App.1979), the court held:
"Plaintiff first complains that it was improperly denied the opportunity to prove its damages. In essence, the experts were unable to testify as to the extent of damage to the roof and its value in its damaged condition. They were also prohibited from testifying as to specifications for reroofing they had prepared. Plaintiff argues this led to an improper charge to the jury that even if it found Universal and Pearce, DeMoss liable, it could only assess nominal damages against these defendants.
"Next, plaintiff complains that the experts were wrongfully denied the opportunity to express opinions as to the quality of the workmanship in installing the roof and as to the suitability of the materials used in the roofing system. It is argued that this led to an erroneous granting of directed verdict in favor of Interstate, Johns-Manville, and Wiley and Wilson.
". . . .

*406 "Turning first to the excluded testimony itself we find the following:
"The experts in question, Carl Cash and David Adler, both testified they were employed by Simpson, Gumpertz and Heger (SG & H), a firm located in Boston, Massachusetts. The Boston firm provides engineering services, preparing structural designs and specifications. It also engages in investigations of structural problems and roofing systems, having investigated numerous cases of roofing and waterproofing systems' failures throughout the country.
"Witness Cash testified he was employed by SG & H as a chemist and has worked in the area of built-up roofing for more than twenty years. He has authored articles and manuals on roofing materials and standards as well as writing on the causes of built-up roofing systems' failures.
"Adler testified he was a senior staff engineer of SG & H with a degree in engineering from Tufts University. He has supervised the installation of several hundred built-up roofing systems throughout his career with various firms. He has been qualified by the National Roofing Contractors Association for a technical assistance program which provides roofing consultants for various projects.
"Cash made five trips to Federal Mogul's plant and after taking sample cuttings from the roof for purposes of analysis, determined it needed replacements. Pursuant to contract with plaintiff he drew up specifications for this purpose.
"The trial judge at first allowed these into evidence, but upon objection by defendants which led to his ascertaining that neither Cash as an individual nor SG & H as a firm were licensed to practice architecture or engineering in the State of Alabama, ordered them expunged from the record. The apparent basis for this was his conclusion that the information Cash gained in inspecting the roof and utilized in preparing the specifications came as a direct result of his engaging in the illegal activity of practicing in Alabama as an architect or engineer without a license.
"We hold it was error to exclude the specifications from the record. At this point we also note that the court further excluded a contract to reroof between plaintiff and Heritage Construction Company, based upon these specifications. The grounds for this were the same, i.e., that the construction firm was not licensed in Alabama. The court ruled the contract was void and unenforceable and therefore incompetent as evidence. Thus, plaintiff was unable to offer any evidence on the cost of replacing the allegedly defective roof.
"As we find the same basic error led to the exclusion of both the specifications and the contract with Heritage, we address both of these issues at this time.
"We observe the appellees raised the illegality of the documents at the trial below and also argue it in brief. Thus, they refer us to representative cases where unlicensed engineers, architects, and real estate brokers, suing to recover for their services rendered, were denied relief due to the unenforceability of their contracts. See Southern Metal Treating Co. v. Goodner, 271 Ala. 510, 125 So.2d 268 (1960).
"The rationale behind these decisions is that such licensing statutes are an exercise of the police power, enacted for regulatory purposes, and designed to protect the public against fraud and imposition. Our cases hold that contracts in contravention of these statutes are void and unenforceable and refuse to *407 allow recovery on grounds of public policy.
"As plaintiff points out, an analysis of these cases reveals a common strand running throughout. All cases where the argument prevailed were litigated between immediate parties to the contract with the defendants therein raising the illegality of the agreement as a defense to the action.
"However, nonparties have not been so successful. Thus, in Marx v. Lining, 231 Ala. 445, 165 So. 207 (1936), a vendor utilized interpleader when faced with the conflicting claims of two real estate brokers to the commission on the sale of the vendor's property. One of the brokers asserted the other had no claim to the commission as she was not properly licensed. He reasoned this deficiency rendered the contract between the vendor and the rival broker void and unenforceable.
"Our supreme court answered this by observing that contracts which are void, not because of any intrinsic immorality, but because they offend a statutory policy, may, in some instances, be enforced in a court of law because of the inability of the party affected to plead their invalidity. In applying this doctrine, the court held that the defense of illegality, although open to the parties and those claiming under them, cannot as a general rule be invoked by third persons.
"We follow that general rule today and hold it was error for the trial court to exclude the specifications and contract on the grounds of illegality. These documents were crucial to plaintiff's case on damages, and their exclusion was instrumental in leading the trial court to its erroneous charge taking the issue of damages away from the jury.
"Plaintiff further complains of the ruling below that neither Cash nor Adler could testify as experts in the field of engineering. However, the trial judge did indicate he would allow them to testify as experts on roofing materials and their installation.
"We hold that such a mechanistic application of labels was inappropriate. In so ruling, the court created a distinction impossible of consistent enforcement, the record illustrating that a great deal of testimony within the realm of these men's expertise was erroneously excluded.
"At the outset, we acknowledge that the question of whether a witness offered as an expert is shown to be qualified is within the discretion of the trial court. On review, its decision will not be reversed unless it clearly appears that it was prejudicially erroneous and worked an injury to appellant's cause. Gregath v. Bates, Ala.Civ.App., 359 So.2d 404 (1978).
"In holding that such error did occur here, we note that the overall effect of the ruling below is to require proof of proper licensure as a condition precedent to the giving of expert testimony in the field of engineering. Such a rule does not comport with the practice followed by Alabama courts. Generally, if by training, study, observation, practice, experience, or profession the witness has acquired a knowledge in a particular field beyond that of ordinary laymen, he has earned the appellation `expert' in that field. Aetna Life Ins. Co. v. Hare, 47 Ala.App. 478, 256 So.2d 904 (1972).
"Furthermore, our decisions hold that experience and practical knowledge may qualify one to make technical judgments as readily as formal education. International Telecommunications Systems v. State, Ala., 359 So.2d 364 (1978). In International, the purported expert's qualifications were attacked on the *408 grounds that he had no engineering degree and little formal training. Our supreme court, through Justice Beatty, noted his practical experience and affirmed the admission of his opinion, indicating any other course would have been improper.
"We also note that the plaintiff did not experience difficulty in introducing Cash and Adler's testimony until the licensure problem erupted. This further buttresses our conclusion that the trial judge improperly equated lack of licensure with lack of expertise and therefore failed to look to the proper yardsticks as developed in our decisional law.
"In view of the above, the witnesses Cash and Adler, obviously educated and experienced in the field of engineering, should have been allowed to state their opinions as to such matters as the suitability of the roofing materials, the quality of the workmanship involved, the condition of the roof, and the need for replacement."
Similarly, other jurisdictions have concluded that being licensed in the state in which he or she testifies is not a prerequisite to testimony by an expert witness. See Hayes v. United States, 367 F.2d 216, 222 (10th Cir.1966) (noting that "[i]t is well settled that medical experts may be permitted to testify in matters concerning which they are qualified even though they may not be licensed to practice medicine in the jurisdiction involved"); Paradise Prairie Land Co. v. United States, 212 F.2d 170, 173 (5th Cir.1954) (holding that "[t]he inquiry by the trial judge as to the qualifications of such a witness should be whether or not the witness possesses the special knowledge and experience to qualify him as an expert, not whether or not he has complied with the state's licensing requirements to practice that profession"); Teat v. State, 237 Ga.App. 867, 516 S.E.2d 794, 796 (1999) (holding that "[a] witness need not be licensed to practice psychology in Georgia in order to qualify as an expert in matters of psychology or mental health" in a case that involved testimony by an unlicensed psychologist); In re: C.W.D., 232 Ga.App. 200, 501 S.E.2d 232, 239 (1998) (noting that "[t]he possession of a license in Georgia does not go to qualification as an expert witness but may go to the weight and credibility that a jury gives to such expert's opinion" in a case that involved testimony by a psychologist who was not licensed in Georgia); Kluck v. Kluck, 561 N.W.2d 263, 266 (N.D.1997) (holding that "[e]vidence Rule 702 does not require licensure in a particular field, or licensure in the court's jurisdiction, to qualify as an expert" in a case that involved a custody evaluation by a psychologist who was not licensed in North Dakota); Fowler v. City of Manassas Dep't. of Social Servs., (No. 0878-94-4, January 17, 1995) (Va.Ct.App.1995) (unpublished memorandum) (stating that "[w]e find neither authority nor need for an additional requirement that an otherwise qualified professional called as an expert witness must be licensed to practice in Virginia" in a case that involved testimony by a psychologist who was not licensed in Virginia); Reutter v. State, 886 P.2d 1298, 1308 (Alaska Ct.App.1994) (noting that "[t]here is no requirement that a witness possess a particular license or academic degree, provided that the factfinder can receive appreciable help from the witness' testimony"); People v. Scalera, 118 A.D.2d 670, 500 N.Y.S.2d 19, 20 (1986) (holding that "the trial court did not abuse its discretion in admitting in evidence the opinion of a physician who was not licensed to practice medicine in New York"); State v. Walker, 58 Or.App. 607, 649 P.2d 624, 625 (1982) (holding that "[t]he trial court properly ruled that the psychologist's lack of a license went, at most, to the weight of his *409 testimony, not to its admissibility" in a case that involved testimony by a clinical psychologist who was not licensed in Oregon). See also Geophysical Sys. Corp. v. Seismograph Serv. Corp., 738 F.Supp. 348 (C.D.Cal.1990); State v. Belken, 633 N.W.2d 786 (Iowa 2001); Coe v. State, 17 S.W.3d 193 (Tenn.2000); Commonwealth v. Brown, 544 Pa. 406, 676 A.2d 1178 (1996); Yandell v. State, 262 Ark. 195, 555 S.W.2d 561 (1977); Ducote v. Allstate Ins. Co., 242 So.2d 103 (La.Ct.App.1970).
We adopt the rationale of the Alabama Court of Civil Appeals and the other jurisdictions cited and hold that the fact that an expert is not licensed to practice his or her specialty in Alabama does not, by itself, prevent him or her from testifying as an expert witness in a criminal case in Alabama.
Further, we conclude that the fact that practicing psychology without a license is a misdemeanor does not necessarily prevent a witness from being qualified to testify as an expert. In Hagen v. Swenson, 306 Minn. 527, 236 N.W.2d 161, 162 (1975), the Minnesota Supreme Court addressed a similar situation as follows:
"Plaintiff alleges that the trial court improperly allowed expert testimony. Dr. Andrew Leemhuis, a neurologist and psychiatrist, was permitted to interpret plaintiff's Minnesota Multiphasic Personality Inventory (MMPI). Plaintiff argues that such an interpretation is the `practice of psychology' within the meaning of Minn. St. 148.89, subd. 1. The private practice of psychology without a license is a misdemeanor under § 148.97, subd. 1. We reject plaintiff's contention that these statutes act to prohibit the testimony of Dr. Leemhuis, who is not a licensed psychologist. They are licensing statutes that have no direct application to the qualifications of expert witnesses."
(Footnote omitted.)
Finally, with regard to testimony by experts, Rule 702, Ala. R. Evid., provides:
"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."
This Rule focuses on the proffered witness' knowledge, skill, experience, training, and/or education rather than any particular licensure by the State.
For these reasons, we conclude that the facts that Dr. Sultan was not licensed to practice psychology in Alabama and that practicing psychology in Alabama without a license is a misdemeanor do not, by themselves, operate to disqualify her from testifying as an expert witness.[2]
"If we were to adopt [the circuit court's position], we would in effect preclude expert testimony from, for example, Archimedes himself, the Greek mathematician, physicist, and inventor  credited with the discovery of the principle of the lever  had he come to testify in our courts without first obtaining his license to practice . . . in Rhode Island. Wernher von Braun, the father of our national space program, absent a Rhode Island license, would also fall into that category of ineligibility. We do not believe that our Legislature intended that persons of great learning . . . should be barred from testifying in our courts, and assisting the triers of fact, merely because *410 they have not been licensed here in their respective fields of expertise."
Owens v. Payless Cashways, Inc., 670 A.2d 1240, 1244 (R.I.1996). Therefore, the circuit court erred when it refused to allow Dr. Sultan to testify as an expert in this case on the grounds that she was not licensed to practice psychology in Alabama and that practicing psychology in Alabama without a license is a misdemeanor.

B.
Second, the appellant contends that the circuit court abused its discretion when it used a bifurcated approach to determine whether he should be allowed to present expert psychological testimony. After the circuit court refused to allow Dr. Sultan to testify, the appellant asked to be allowed to present psychological evidence in support of his petition. After some discussion, the circuit court ordered, at the State's suggestion, that the parties submit briefs on the issue of whether the appellant had established that his trial attorneys' performance had been deficient. Subsequently, it concluded that the appellant had not established that his trial attorneys' performance had been deficient and denied his request to obtain and present psychological evidence in support of his petition.
We conclude that, under the facts of this case, the circuit court erred in using such an approach. The appellant did more than simply make bare allegations that his attorneys rendered ineffective assistance by not developing and presenting evidence that he was mentally retarded. In fact, he supported his contention with evidence, including an "Outpatient Forensic Evaluation Report" that showed that, in a 1992 evaluation, "he produced an IQ in the borderline range of intellectual functioning" and a letter in which one of his trial attorneys recommended that they request an independent psychological evaluation for purposes of the sentencing hearing before the trial court. (C.R. 14-15.) However, he still needed to be able to present expert psychological testimony to establish that his attorneys' performance was deficient. Therefore, the bifurcated approach the circuit court used was not appropriate under the specific facts of this case. On remand, the circuit court should allow the appellant to present psychological evidence in support of his argument that his trial attorneys rendered ineffective assistance because they did not develop and present evidence that he is mentally retarded.

II.
The appellant also argues that the circuit court improperly concluded that he is not mentally retarded. In the portion of its order in which it addressed the appellant's argument that his trial attorneys rendered ineffective assistance because they did not develop and present evidence that he is mentally retarded, the circuit court stated: "The Court finds that, based on the evidence available, [the appellant] is not mentally retarded." (Supp.C.R. 65.) For the reasons set forth herein, the circuit court did not have sufficient information before it to make such a finding. On remand, the circuit court shall address this contention only after allowing both parties to submit evidence in support of their respective positions and in compliance with this opinion. In determining whether or not the appellant is mentally retarded, the circuit court should consider the standard set forth in Ex parte Smith, [Ms. 1010267, March 14, 2003] ___ So.2d ___ (Ala.2003); Ex parte Perkins, 851 So.2d 453 (Ala.2002); and Stallworth v. State, 868 So.2d 1128, 1177 (Ala.Crim.App.2003) (opinion on return to second remand).
Accordingly, we remand this case to the circuit court with instructions that that *411 court conduct an evidentiary hearing on and make specific, written findings of fact as to the appellant's contentions that he is mentally retarded and that his trial attorneys rendered ineffective assistance because they did not develop and present evidence that he is mentally retarded. On remand, the circuit court shall take all necessary action to see that the circuit clerk makes due return to this court at the earliest possible time and within 70 days after the release of this opinion. The return to remand shall include the circuit court's specific, written findings of fact and a transcript of the evidentiary hearing.
REMANDED WITH INSTRUCTIONS.
WISE, J., concurs; SHAW, J., concurs in the result, with opinion, which McMILLAN, P.J., and COBB, J., join.
SHAW, Judge, concurring in the result.
I concur in the result only.
Although I would rather remand this case for an Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), hearing after the Legislature has addressed and determined this State's policy on this matter and established procedures and standards for determining whether a capital defendant is mentally retarded and, therefore, not subject to the death penalty, I nonetheless concur to do so to allow the circuit court to conduct an evidentiary hearing and to make additional findings of fact as to whether the appellant is, in fact, mentally retarded under the standards recently discussed in Ex parte Smith, [Ms. 1010267, March 14, 2003] ___ So.2d ___ (Ala.2003); Ex parte Perkins, 851 So.2d 453 (Ala.2002); and Stallworth v. State, 868 So.2d 1128, 1177 (Ala.Crim.App.2003)(opinion on return to second remand). I am aware that legislation addressing this matter has been proposed in the current legislative session, and I join the Alabama Supreme Court in urging the Legislature to develop procedures and standards expeditiously for determining whether a capital defendant is mentally retarded. See Ex parte Perkins, 851 So.2d at 455 n. 1.
McMILLAN, P.J., and COBB, J., concur.

On Return to Remand
BASCHAB, Judge.
On April 25, 2003, we remanded this case to the circuit court with instructions that that court determine whether the appellant, Holly Wood, is mentally retarded and whether his trial attorneys rendered ineffective assistance by not developing and presenting evidence that he is mentally retarded. On remand, the circuit court conducted an evidentiary hearing and entered an extensive order in compliance with our instructions. Afterward, the appellant submitted a brief in which he raised arguments concerning the remand proceedings. We now address the remaining arguments he raised in his brief on original submission and the arguments he raises in his brief on return to remand.
The appellant raises numerous arguments, including claims that his attorneys rendered ineffective assistance during the proceedings. In reviewing the circuit court's rulings on the appellant's arguments, we apply the following principles:
"`"[T]he plain error rule does not apply to Rule 32 proceedings, even if the case involves the death sentence." Thompson v. State, 615 So.2d 129 (Ala.Cr.App.1992).' Cade v. State, 629 So.2d 38, 41 (Ala.Crim.App.1993), cert. denied, [511] U.S. [1046], 114 S.Ct. 1579, 128 L.Ed.2d 221 (1994).
"In addition, `[t]he procedural bars of Rule 32 apply with equal force to all *412 cases, including those in which the death penalty has been imposed.' State v. Tarver, 629 So.2d 14, 19 (Ala.Crim.App.1993)."
Brownlee v. State, 666 So.2d 91, 93 (Ala.Crim.App.1995).
"To prevail on a claim of ineffective assistance of counsel, the defendant must show (1) that his counsel's performance was deficient and (2) that he was prejudiced as a result of the deficient performance. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
"`The appellant must show that his counsel's performance was unreasonable, considering all of the attendant circumstances. . . . "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690, 104 S.Ct. at 2066.'
"Duren v. State, 590 So.2d 360, 362 (Ala.Cr.App.1990), aff'd, 590 So.2d 369 (Ala.1991), cert. denied, [503] U.S. [974], 112 S.Ct. 1594, 118 L.Ed.2d 310 (1992).
"When this court is reviewing a claim of ineffective assistance of counsel, we indulge a strong presumption that counsel's conduct was appropriate and reasonable. Luke v. State, 484 So.2d 531, 534 (Ala.Cr.App.1985). The burden is on the appellant to show that his counsel's conduct was deficient. Luke.

"`Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.'
"Strickland, 466 U.S. at 689, 104 S.Ct. at 2065-66. (Citations omitted.) Ex parte Lawley, 512 So.2d 1370, 1372 (Ala.1987).
"Initially we must determine whether counsel's performance was deficient. We must evaluate whether the action or inaction of counsel of which the petitioner complains was a strategic choice. `Strategic choices made after a thorough investigation of relevant law and facts are virtually unchallengeable. . . .' Lawley, 512 So.2d at 1372. This court must avoid using `hindsight' to evaluate the performance of counsel. We must evaluate all the circumstances surrounding the case at the time of counsel's actions before determining whether counsel rendered ineffective assistance. Falkner v. State, 586 So.2d 39 (Ala.Cr.App.1991)."
Hallford v. State, 629 So.2d 6, 8-9 (Ala.Crim.App.1992).
"In determining whether a defendant has established his burden of showing that his counsel was ineffective, we are not required to address both considerations *413 of the Strickland v. Washington test if the defendant makes an insufficient showing on one of the prongs. Id. at 697, 104 S.Ct. at 2069. In fact, the Court explained that `[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.' Id. We defer to this guidance and address the `prejudice' prong, for `[w]ith respect to the prejudice component, the lack of merit of [Thomas's] claim is even more stark.' Id. at 699, 104 S.Ct. at 2070."
Thomas v. State, 511 So.2d 248, 255 (Ala.Crim.App.1987) (footnote omitted).
"Furthermore, to render effective assistance, an attorney is not required to raise every conceivable constitutional claim available at trial and on appeal. Holladay v. State, 629 So.2d 673 (Ala.Cr.App.1992), cert. denied, 510 U.S. 1171, 114 S.Ct. 1208, 127 L.Ed.2d 555 (1994); McCoy v. Lynaugh, 874 F.2d 954, 965-66 (5th Cir.1989). Rather, counsel must be given some discretion in determining which claims possibly have merit, and, thus a better chance of success, and which claims do not have merit, and thus have little chance of success. Heath v. State, 536 So.2d 142 (Ala.Cr.App.1988); Smith v. Murray, 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986); Engle v. Isaac, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982)."
Davis v. State, 720 So.2d 1006, 1014 (Ala.Crim.App.1998).

I.
The appellant argues that he is mentally retarded, that his attorneys rendered ineffective assistance by not developing and presenting evidence that he is mentally retarded, and that his attorneys rendered ineffective assistance by not requesting a jury instruction on mental retardation. On remand, in a thorough 57-page order, the circuit court made extensive findings concerning the appellant's contentions that he is mentally retarded and that his attorneys rendered ineffective assistance by not developing and presenting evidence that he is mentally retarded. In that order, the circuit court concluded that the appellant did not establish that he is mentally retarded and therefore did not establish that his attorneys rendered ineffective assistance by not developing and presenting evidence that he is mentally retarded. The record supports those findings, and we adopt them as part of this opinion.[1] Therefore, we conclude that the appellant's arguments in this regard are without merit.
In his brief on remand, the appellant argues that the circuit court did not apply the correct standard in determining whether he is mentally retarded; improperly required him to establish that he is mentally retarded by a higher standard than a preponderance of the evidence; and improperly found that he is not mentally retarded. He also argues that the Sixth Amendment requires that his sentence be vacated and that a new sentencing hearing be conducted so a jury can determine whether he is mentally retarded. However, he did not first present any of these arguments to the circuit court. Therefore, they are not properly before this court. See Fincher v. State, 724 So.2d 87 (Ala.Crim.App.1998).
The appellant further argues that, on remand, the State improperly refused to withdraw its threat to prosecute his expert if she testified during the evidentiary hearing. However, before the evidentiary *414 hearing started, the State indicated that it did not have any intention of prosecuting the expert witness if she testified. Therefore, the record refutes the appellant's argument.

II.
The appellant also argues that the attorney who acted as his lead counsel during the penalty phase of his trial "was per se ineffective by virtue of his inexperience and non-compliance with governing Alabama law." (Appellant's brief at p. 31.) Specifically, he contends that one of his trial counsel had practiced as an attorney only five months when he was appointed to handle this case. However, he did not present this argument in any of his petitions or during the evidentiary hearing. Rather, he raised it only in his post-hearing brief. Therefore, it is not properly before this court. See Morrison v. State, 551 So.2d 435 (Ala.Crim.App.1989).
Moreover, the appellant was also represented by two other attorneys who each had more than five years of experience in the practice of criminal law. Therefore, the requirements of § 13A-5-54, Ala.Code 1975, were satisfied in this case, and the appellant's argument is without merit. See Parker v. State, 587 So.2d 1072 (Ala.Crim.App.1991).

III.
The appellant further argues that his attorneys rendered ineffective assistance in numerous instances.

A.
First, the appellant contends that his attorneys rendered ineffective assistance because they allegedly did not investigate and present sufficient mitigating evidence during the penalty phase of his trial. In support of his contention, he makes reference to additional evidence that he contends is mitigating and that he contends his attorneys could have presented during the penalty phase of his trial.
In Daniels v. State, 650 So.2d 544, 568-70 (Ala.Crim.App.1994), we stated the following regarding a claim that trial counsel had rendered ineffective assistance during the penalty phase of a capital murder trial:
"In determining whether Haas was ineffective at original sentencing,. . . we recognize that the
"`two-pronged Strickland analysis applies whether the ineffectiveness complained of occurred in the defendant's trial or in a subsequent adversarial sentencing proceeding. However, in a challenge to the imposition of a death sentence, the prejudice prong of the Strickland inquiry focuses on whether "the sentences . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.'"
"Stevens v. Zant, 968 F.2d 1076, 1081 (11th Cir.1992) (citation omitted), cert. denied, [507] U.S. [929], 113 S.Ct. 1306, 122 L.Ed.2d 695 (1993). We also recognize that
"`[w]hile "[i]t should be beyond cavil that an attorney who fails altogether to make any preparations for the penalty phase of a capital murder trial deprives his client of reasonably effective assistance of counsel by any objective standard of reasonableness," see Blake v. Kemp, 758 F.2d 523, 533 (11th Cir.1985), it is unclear how detailed an investigation is necessary to provide a defendant with the effective assistance of counsel. Strickland only requires that counsel's actions fall within the wide spectrum of what can be considered reasonable assistance of counsel.'

*415 "White v. Singletary, 972 F.2d 1218, 1224 (11th Cir.1992). The principles regarding an attorney's duty to conduct an investigation into mitigating evidence have been summarized as follows:
"`An attorney has a duty to conduct a reasonable investigation, including an investigation of the defendant's background, for possible mitigating evidence. Thompson v. Wainwright, 787 F.2d 1447, 1451 (11th Cir.1986). First, it must be determined whether a reasonable investigation should have uncovered such mitigating evidence. If so, then a determination must be made whether the failure to put this evidence before the jury was a tactical choice by trial counsel. If so, such a choice must be given a strong presumption of correctness, and the inquiry is generally at an end. Funchess v. Wainwright, 772 F.2d 683, 689-90 (11th Cir.1985). If, however, the failure to present the mitigating evidence was an oversight, and not a tactical decision, then a harmlessness review must be made to determine if there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Thus, it must be determined that defendant suffered actual prejudice due to the ineffectiveness of his trial counsel before relief will be granted.'
"Middleton v. Dugger, 849 F.2d 491, 493 (11th Cir.1988).
"Applying the foregoing principles to the issue of whether Haas provided effective assistance of counsel at original sentencing, we conclude that the appellant's claim is without merit. Although the defense called only one witness at the sentencing hearing, that witness was Mrs. Hebert, the appellant's mother, who pleaded for the appellant's life. Mrs. Hebert had retained Haas, conferred with him at length, paid all his trial fees, and, by the time of sentencing, had exhausted her funds. The circuit court's sentencing order stated that `it is apparent to the court that [Mrs. Hebert] was devoted to [the appellant].'
"Since Haas had spoken with Mrs. Hebert about the appellant and had observed by her words and actions that she appeared to be `devoted' to the appellant, we cannot fault Haas for failing to discover the appellant's `traumatic' childhood, in which, according to later testimony by Dr. Herlihy, Mrs. Hebert's `emotional rejection' of her son played a large part. Compare Bertolotti v. Dugger, 883 F.2d 1503, 1520 (11th Cir.1989) (defense counsel held to have provided effective assistance on claim that counsel overlooked or failed to investigate evidence of defendant's traumatic childhood, where counsel interviewed defendant's parents), cert. denied, 497 U.S. 1031 [1032], 110 S.Ct. 3296, 111 L.Ed.2d 804 (1990). See also Beets v. Collins, 986 F.2d 1478, 1488-89 (5th Cir.1993) (although counsel did not `conduct a thorough investigation of [the defendant's] medical, mental, and psychological history,' which would have revealed that the defendant `was raised in abject poverty, experienced a debilitating hearing loss, was afflicted with learning disabilities, had received head injuries as a child, and suffers from battered woman syndrome,' the court observed that the defendant never gave her attorney `any hint that she had been abused by previous husbands or boyfriends. Neither [the defendant] nor any other member of her family ever conveyed to [the attorney] any information giving him reason to believe that she had a history of being physically abused.'), rehearing granted, 998 F.2d 253 (5th Cir.1993); Cantu v. Collins, 967 F.2d 1006, 1016 *416 (5th Cir.1992) (despite fact that counsel failed to present evidence of defendant's `low IQ, emotional immaturity, troubled youth, trauma as a result of his parents' divorce, and appearance of neglect,' court found that counsel had `thoroughly investigated these claims, consulting with his client as well as [client's] father and brother for possible mitigating evidence,' and the claims were not supported in fact), cert. denied, [509] U.S. [926], 113 S.Ct. 3045, 125 L.Ed.2d 730 (1993); Wilkerson v. Collins, 950 F.2d 1054, 1064-65 (5th Cir.1992) (although attorney failed to discover or develop mitigating evidence that defendant had a `deprived family background,' and psychological and mental `limitations,' the court observed that `trial counsel interviewed [the defendant], his mother, and other relatives. Neither [the defendant] nor his relatives were able to supply the names of potential defense witnesses. Investigation did not reveal reason to suspect that [the defendant's] mental capacity was in any fashion impaired.'), cert. denied, [509] U.S. [921], 113 S.Ct. 3035, 125 L.Ed.2d 722 (1993); Thompson v. State, 581 So.2d 1216, 1238 (Ala.Cr.App.1991) (upholding circuit court's finding that counsel, who presented only the testimony of defendant's mother at sentencing, was not ineffective for failing to present evidence of the defendant's violent family background, addiction and substance abuse), cert. denied, 502 U.S. 1030, 112 S.Ct. 868, 116 L.Ed.2d 774 (1992).
"We hold that Haas was not ineffective at the original sentencing proceeding."
650 So.2d at 568-70 (emphasis omitted). Also, counsel does not necessarily render ineffective assistance simply because he does not present all possible mitigating evidence. "Although the failure to conduct a reasonable investigation of possible mitigating evidence may constitute ineffective assistance of counsel, `counsel may make a reasonable strategic judgment to present less than all possible available evidence in mitigation.' Stanley v. Zant, 697 F.2d 955, 965 (11th Cir.1983), cert. denied, 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984)." Lundy v. State, 568 So.2d 399, 403 (Ala.Crim.App.1990).
"When a decision to not put on certain mitigating evidence is based on a `strategic choice,' courts have always found no ineffective performance. Moore v. Maggio, 740 F.2d 308 (5th Cir.1984), cert. denied, 472 U.S. 1032, 105 S.Ct. 3514, 87 L.Ed.2d 643 (1985); Lowenfield v. Phelps, 817 F.2d 285 (5th Cir.1987), aff'd, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988). No two lawyers would try a case exactly the same way.
"We cannot say that counsel's performance is deficient because he failed to call more witnesses at the sentencing phase. `The decision not to call a particular witness is usually a tactical decision not constituting ineffective assistance of counsel.' Oliver v. State, 435 So.2d 207, 208 (Ala.Cr.App.1983). At the hearing on the Rule 32 petition, the appellant's mother, two of his aunts, an uncle, and several old friends offered character testimony. Most of these witnesses did not have contact with the appellant near the time of the murder. There has never been a case where additional witnesses could not have been called. The appellant presented relatives and personal friends who, upon interview, were found to testify on his behalf. We refuse to set a standard that a court may be reversed because it did not hear unoffered testimony from still more friends and relatives. We also refuse to say that a member of the bar is guilty of ineffectiveness for not calling every witness and friend who was willing to testify. *417 To hold otherwise would clog an already overburdened system with repetitious testimony. The appellant has failed to satisfy either prong of the Strickland test."
State v. Tarver, 629 So.2d 14, 21 (Ala.Crim.App.1993).
"With regard to McKinnon's representation of Morrison at the punishment-fixing and sentencing phases of his trial, we find that the observations of the court in Clark v. Dugger, 834 F.2d 1561, 1568 (11th Cir.1987), are appropriate:
"`The failure to conduct a reasonable investigation of possible mitigating evidence may render counsel's assistance ineffective. Lightbourne v. Dugger, 829 F.2d 1012, 1025 (11th Cir.1987); Thompson v. Wainwright, 787 F.2d 1447, 1450 (11th Cir.1986), cert. denied, 481 U.S. 1042, 107 S.Ct. 1986, 95 L.Ed.2d 825 (1987). "After a sufficient investigation, however, `counsel may make a reasonable strategic judgment to present less than all possible available evidence in mitigation.'" Lightbourne, 829 F.2d at 1025 (quoting Mitchell v. Kemp, 762 F.2d 886, 889 (11th Cir.1985), cert. denied, 483 U.S. 1026, 107 S.Ct. 3248, 97 L.Ed.2d 774 (1987) and Stanley v. Zant, 697 F.2d 955, 965 (11th Cir.1983), cert. denied, sub nom. [Stanley v. Kemp,] 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984)). In essence, "[c]ounsel has no absolute duty to present mitigating character evidence." Id. (quoting Mitchell, 762 F.2d at 889). [Counsel] conducted a reasonable investigation to determine the availability of appropriate mitigating evidence and simply made a tactical decision to not present some of the available mitigating evidence. In this circuit, [counsel's] decision is "accorded a strong presumption of correctness which is `virtually unchallengeable.'" Id. (quoting Sinclair v. Wainwright, 814 F.2d 1516, 1519 (11th Cir.1987) and Strickland v. Washington, 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984)). Given the alternatives . . . faced, [counsel's] handling of the penalty phase was not unreasonable. See Stanley, 697 F.2d at 958-70. We therefore conclude that there has been no showing of ineffective assistance nor prejudice to defendant in the way trial counsel prepared and tried [this] case.'"
Morrison v. State, 551 So.2d 435, 445 (Ala.Crim.App.1989) (alterations in original).
"We find that the holding of Fleming v. Kemp, 748 F.2d 1435, 1452 (11th Cir.1984), cert. denied, 475 U.S. 1058, 106 S.Ct. 1286, 89 L.Ed.2d 593 (1986), is applicable here:
"`In summary, we are not persuaded by petitioner's argument that . . . [defense counsel] rendered him ineffective assistance of counsel. Petitioner's examples of professional dereliction dissolve away under close scrutiny, leaving at best a handful of colorable claims. A defense attorney is not ineffective solely because his client is sentenced to death. "Intrusive post-trial inquiry into attorney performance," such as that which has been required in this case, may "dampen the ardor and impair the independence of defense counsel, discourage the acceptance of assigned cases, and undermine the trust between attorney and client." Strickland v. Washington, [466] U.S. at [690], 104 S.Ct. at 2066. Counsel's performance, here, ensured a fundamentally "fair trial" which "produced a just result." Id. at [686], 104 S.Ct. at 2064. There is no reason to set *418 aside petitioner's conviction or his penalty on account of the representation he received.'"
Bell v. State, 518 So.2d 840, 847 (Ala.Crim.App.1987). Finally, the appellant bears a heavy burden of proof when he claims that his counsel rendered ineffective assistance.
"Further, we cannot say that the appellant suffered any prejudice based on counsel's performance because he failed to demonstrate any evidence of mitigation. Prejudice cannot merely be alleged; it must be affirmatively proved. Duren v. State, 590 So.2d 360 (Ala.Crim.App.1990). Thus, the appellant has not shown that there is a reasonable probability that the outcome of his trial would have been different, but for trial counsel's performance. Baldwin [v. State, 539 So.2d 1103 (Ala.Crim.App. 1988)], Thompson v. State, 581 So.2d 1216 (Ala.Crim.App.1991), cert. denied, 502 U.S. 1030, 112 S.Ct. 868, 116 L.Ed.2d 774 (1992)."
Brooks v. State, 695 So.2d 176, 182 (Ala.Crim.App.1996), aff'd, 695 So.2d 184 (Ala.1997).
When it addressed this contention, the circuit court noted, in part:
"Many of the [claims] asserted by Wood allege that more should have been done. When a claim is raised that trial counsel should have done something more, the Court first looks at what counsel did in fact. Chandler, 218 F.3d at 1319. In this case, counsel employed the services of an investigator. In addition, Attorney Trotter met with Wood's family in preparing for the penalty phase. At the penalty phase, trial counsel presented testimony from Wood's father and two of his siblings. Trial counsel also presented evidence suggesting that Wood suffered from an emotional disturbance. Further, the record shows that trial counsel used the services of a private investigator, who prepared reports for use in preparing Wood's defense. The record also shows that trial counsel investigated a potential mental health defense, but decided against presenting it. At the meetings between Attorney Trotter and Wood's family, Trotter testified that he attempted to gather information about Wood's upbringing, background, childhood, what it had been like growing up in Wood's home, Wood's characteristics, and information that could humanize Wood in the jury's eyes.
"Counsel also attempted to get information from Wood's schools. In that regard, counsel contacted individuals at Luverne High School. The testimony at the evidentiary hearing also shows that trial counsel sought information from the Alabama Department of Pardons and Paroles, the Alabama Department of Corrections, and the Department of Human Resources. In addition, trial counsel sought guidance from the Capital Resource Center and the Southern Poverty Law Center.
"Based on the evidence in the record, the Court finds that Wood failed to establish that what trial counsel did in preparation and investigation for the penalty phase was unreasonable. A.R. Cr. P., 32.3. Thus, Wood's claims that more should have been done are not well-taken. The Court finds that Wood failed to establish deficient performance of his attorneys during their preparation of the penalty phase."
(S.C.R. 56-57.) We agree with the circuit court's findings, conclude that they are supported by the record, and adopt them as part of this opinion. Although the appellant has made allegations regarding the performance of his attorneys, he has not established that their performance was deficient and that he was prejudiced by their *419 deficient performance. Therefore, because he has not satisfied his burden of pleading and proof pursuant to Rules 32.3 and 32.6(b), Ala. R.Crim. P., and Strickland as to these claims, he is not entitled to relief in this regard.

B.
Second, the appellant contends that his attorneys rendered ineffective assistance because they:
1) did not adequately prepare for the suppression hearing;
2) did not properly prepare for and act properly during the voir dire proceedings;
3) did not properly advise the appellant regarding jury sequestration;
4) did not adequately argue their Batson motion;
5) did not adequately investigate and challenge the State's investigation and presentation of the case;
6) did not present any defense witnesses during the guilt phase of the trial;
7) did not adequately challenge the evidence the State relied on to establish the burglary and the murder;
8) did not procure necessary expert assistance;
9) did not adequately develop impeachment evidence against the State's leading witness;
10) did not adequately challenge the testimony of the State's witnesses regarding the intentional murder;
11) did not adequately investigate and present evidence regarding his mental state and intoxication at the time of the offense;
12) did not object to prosecutorial misconduct;
13) did not request a jury instruction on intoxication; and
14) did not ask the judge who presided over his trial to recuse himself.
The appellant has made allegations as to these contentions, but he has not adequately established that his attorneys' performance was deficient and that that deficient performance prejudiced him. Therefore, he has not satisfied his burden of pleading and proof under Rules 32.3 and 32.6(b), Ala. R.Crim. P., and Strickland. Accordingly, he is not entitled to relief on these claims.

C.
Third, the appellant contends that his attorneys rendered ineffective assistance, in part, due to allegedly inadequate compensation. To the extent he challenges the statutory limit on attorney fees in capital cases, his argument is procedurally barred because he could have raised it at trial and on appeal, but did not. See Rule 32.2(a)(3) and (a)(5), Ala. R.Crim. P. To the extent he raises an ineffective-assistance-of-counsel claim, his argument is without merit. As set forth above, the circuit court found that the appellant's attorneys rendered effective assistance at trial and on direct appeal. The records of the appellant's trial and the Rule 32 proceedings support those findings. Therefore, the appellant has not satisfied his burden of proof under Strickland or Rule 32.3 and 32.6(b), Ala. R.Crim. P., and he is not entitled to relief on this claim.

IV.
Additionally, the appellant argues that he is entitled to post-conviction relief because:
1) the judge who presided over his trial should have recused himself;
2) he was arrested without a warrant or probable cause;

*420 3) any statements he made should have been suppressed;
4) the prosecutor engaged in misconduct during the trial and sentencing proceedings;
5) the capital murder statute pursuant to which he was convicted is unconstitutional;
6) the State did not comply with its discovery obligations under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963);
7) the State did not give adequate notice of the aggravating circumstances upon which it intended to rely;
8) the trial court improperly refused to remove prospective jurors for cause;
9) his death sentence was imposed in a racially discriminatory manner;
10) his human rights were violated in contravention of the International Convention of Civil and Political Rights and the International Convention on the Elimination of All Forms of Racial Discrimination; and
11) his rights were violated because a juror did not answer a question truthfully during the voir dire proceedings.
Claims 1-10 are nonjurisdictional claims that are precluded pursuant to the provisions of Rule 32.2(a), Ala. R.Crim. P. Also, the appellant has made only bare allegations as to Claim 11 and has not established that he could not have raised that claim at trial and on appeal. See Rules 32.1(e), 32.3, and 32.6(b), Ala. R.Crim. P. Therefore, he is not entitled to relief on any of these claims.

V.
Finally, the appellant argues that the circuit court improperly adopted verbatim the State's proposed order.
"`While the practice of adopting the State's proposed findings of fact and conclusions of law is subject to criticism, the general rule is that even when the court adopts proposed findings and conclusions verbatim, the findings are those of the court and may be reversed only if clearly erroneous. Anderson v. City of Bessemer, N.C., 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); Hubbard v. State, 584 So.2d 895 (Ala.Cr.App.1991); Weeks v. State, 568 So.2d 864 (Ala.Cr.App.1989), cert. denied, 498 U.S. 882, 111 S.Ct. 230, 112 L.Ed.2d 184 (1990); Morrison v. State, 551 So.2d 435 (Ala.Cr.App.1989), cert. denied, 495 U.S. 911, 110 S.Ct. 1938, 109 L.Ed.2d 301 (1990).'
"Wright v. State, 593 So.2d 111, 117-18 (Ala.Cr.App.1991), cert. denied, [506] U.S. [844], 113 S.Ct. 132, 121 L.Ed.2d 86 (1992)."
Holladay v. State, 629 So.2d 673, 687-88 (Ala.Crim.App.1992). The record does not indicate that the circuit court's findings are clearly erroneous. In fact, it supports those findings. Therefore, the appellant's argument is without merit.
For the above-stated reasons, we affirm the circuit court's judgment.
AFFIRMED.
McMILLAN, P.J., and SHAW and WISE, JJ., concur; COBB, J., concurs in part in the rationale and concurs in the result, with opinion.
COBB, Judge, concurring in part in the rationale and concurring in the result.
I concur with the majority as to its resolution of the issues in Parts II  V of the opinion. I agree with the result reached by the majority in Part I. I write specially to express my concern regarding the majority's adoption of the trial court's order on return to remand.
*421 In Wood v. State, 891 So.2d 398 (Ala.Crim.App.2003), we remanded the cause for the trial court to conduct an evidentiary hearing to determine whether Wood is mentally retarded and, if so, to determine whether his trial attorneys rendered ineffective assistance by failing to develop and present evidence of his retardation. The trial court conducted the hearing and filed with this Court a comprehensive, superbly written order on return to remand. The trial court thoroughly discussed the evidence presented at the hearing and correctly applied the relevant law to those facts.
I do not disagree with the majority's adoption of the trial court's order on return to remand. However, I believe that, in a case involving review of post-conviction proceedings in a capital murder case in which the death penalty was imposed, discussion and analysis of the trial court's findings of fact and conclusions of law are necessary. Without any specific discussion or analysis of the findings in the trial court's order on return to remand, indeed, without quotation to any of the relevant portions it says the Court adopts, the decision of this Court as to this issue has virtually no precedential value and review of this issue by higher courts will be made unnecessarily difficult.
I would prefer a more comprehensive discussion of the trial court's findings and conclusions in Part I. Therefore, I concur in the result as to Part I.
NOTES
[1] At this time, we pretermit discussion of the remaining arguments the appellant raises in his brief.
[2] A court should evaluate a proffered expert witness' qualifications based on the standard set forth in Rule 702, Ala. R. Evid.
[1] We have taken judicial notice of the record from the appellant's direct appeal in this case. See Nettles v. State, 731 So.2d 626 (Ala.Crim.App.1998).