851 So.2d 453 (2002)
Ex parte Roy Edward PERKINS.
(In re Roy Edward Perkins v. State of Alabama).
1991016.
Supreme Court of Alabama.
November 22, 2002.
Rehearing Denied January 31, 2003.
*454 Sanjay K. Chhablani, Atlanta, Georgia, for petitioner.
William H. Pryor, Jr., atty. gen., and A. Vernon Barnett IV, asst. atty. gen., for respondent.

On Remand from the United States Supreme Court
STUART, Justice.
The United States Supreme Court has vacated our earlier judgment in this case and has remanded the cause for our further consideration in accordance with Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002). Perkins v. Alabama, 536 U.S. 953, 122 S.Ct. 2653, 153 L.Ed.2d 830 (mem.).
The facts are set out in their entirety in Perkins v. State, 808 So.2d 1041, 1052-56 (Ala.Crim.App.1999), and we note them here only briefly: Perkins abducted Cathy Gilliam from her house and shot her in the chest with a .357 Magnum pistol, killing her. Perkins was convicted of murder made capital because it was committed during the course of a first-degree kidnapping, see § 13A-5-40(a)(1), Ala.Code 1975. The jury, by a vote of 10-2, recommended that Perkins be sentenced to death. After weighing the aggravating circumstances and the mitigating circumstances, the trial court sentenced Perkins to death. The Court of Criminal Appeals affirmed Perkins's conviction and sentence. Perkins v. State, supra. This Court, after conducting a thorough plain-error review of Perkins's conviction and sentence, affirmed the judgment of the Court of Criminal Appeals. Ex parte Perkins, 808 So.2d 1143 (Ala. 2001). The United States Supreme Court granted Perkins's petition for certiorari review, and vacated our earlier judgment and remanded the case for further consideration in light of its recent holding in Atkins that executing a mentally retarded individual violates the ban on cruel and unusual punishments found in the Eighth Amendment to the United States Constitution. Atkins, 536 U.S. at 317-18, 122 S.Ct. at 2250. On September 19, 2002, this Court ordered supplemental briefing from the parties on this issue, and on November 6, 2002, the issue was orally argued.
The United States Supreme Court decided Atkins after we issued our opinion on direct appeal in this case and while this case was pending on certiorari review before the United States Supreme Court; consequently, this issue is raised for the first time on remand from the United States Supreme Court and we apply the plain-error standard of review.
"[T]his Court's review of a death-penalty case allows us to address any plain error or defect found in the proceeding under review, even if the error was not brought to the attention of the trial court. Rule 39(a)(2)(D) and (k), Ala. R.App. P. `"`Plain error' only arises if the error is so obvious that the failure to notice it would seriously affect the fairness or integrity of the judicial proceedings."' Ex parte Womack, 435 So.2d 766, 769 (Ala.), cert. denied, Womack v. *455 Alabama, 464 U.S. 986, 104 S.Ct. 436, 78 L.Ed.2d 367 (1983), quoting United States v. Chaney, 662 F.2d 1148, 1152 (5th Cir.1981). The plain-error standard applies only where a particularly egregious error occurs at trial. Ex parte Harrell, 470 So.2d 1309, 1313 (Ala.), cert. denied, 474 U.S. 935, 106 S.Ct. 269, 88 L.Ed.2d 276 (1985). When the error `has or probably has' substantially prejudiced the defendant, this Court may take appropriate action. Rule 39(a)(2)(D) and (k), Ala. R.App. P.; Ex parte Henderson, 583 So.2d 305, 306 (Ala.1991), cert. denied, Henderson v. Alabama, 503 U.S. 908, 112 S.Ct. 1268, 117 L.Ed.2d 496 (1992)."
Ex parte Minor, 780 So.2d 796, 799-800 (Ala.2000)(footnote omitted).
Conducting a plain-error review of this issue is consistent with this Court's treatment of the retroactive application of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), mandated by the United States Supreme Court's holding in Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), to cases pending on direct review or otherwise not yet final. In Ex parte Watkins, 509 So.2d 1074 (Ala.1987), this Court conducted a plain-error review of the record to determine if there was any evidence to indicate that the State had exercised its peremptory challenges to remove prospective black jurors from the venire solely on account of their race, which would mandate a remand in light of Griffith. We noted that although the record indicated that the defendant was black and the victim was white, the record was simply devoid of any inference that the State had engaged in the practice of purposeful discrimination. We concluded that the defendant could not establish, and we could not hold, that plain error occurred "when there [was] no indication in the record that the act upon which error [was] predicated ever occurred." 509 So.2d at 1077.
The standard applicable to plain-error review is a stringent one, i.e., the "error has or probably has adversely affected the substantial right of the appellant," Rule 45A, Ala. R.App. P. Applying that standard, we reject Perkins's contention that in light of the holding in Atkins, we must remand this cause for the trial court to conduct a hearing to determine if he is mentally retarded and therefore not subject to the death penalty.
We have conducted a thorough review of the record to determine if there is any inference that Perkins is mentally retarded. Although the Legislature has not had an occasion to address this State's policy on this matter and establish a procedure for determining whether a capital defendant is mentally retarded and, therefore, not subject to the death penalty,[1] we conclude *456 that Perkins does not suffer from mental retardation under the definitions considered by the United States Supreme Court in reaching its holding in Atkins[2] or as defined by any of the state statutes that prohibit the imposition of the death sentence on a mentally retarded defendant.[3]
We agree with the State that this Court can determine, based on the facts presented at Perkins's trial, that Perkins, even under the broadest definition of mental retardation, is not mentally retarded. Those states with statutes prohibiting the execution of a mentally retarded defendant require that a defendant, to be considered mentally retarded, must have significantly subaverage intellectual functioning (an IQ of 70 or below), and significant or substantial deficits in adaptive behavior. Additionally, these problems must have manifested themselves during the developmental period (i.e., before the defendant reached age 18).
The record establishes that Dr. John Goff, a licensed clinical neuropsychologist and clinical psychologist, testified on Perkins's behalf. According to Dr. Goff, Perkins, when tested as an adult, has a full-score IQ of 76, with a verbal score of 80 and a performance score of 74. Dr. Goff stated that Perkins's IQ scores indicate a borderline range of psychometric intelligence, and that his intellectual functioning has probably declined as he has aged because of his abuse of alcohol. Moreover, the record indicates that Perkins earned a GED certificate while he has been in prison and has completed community college courses there. Dr. Goff diagnosed Perkins with a borderline personality disorder and an alcohol dependence; he did not conclude that Perkins was mentally retarded. We find Dr. Goff's diagnosis pivotal in light of the fact that, when the penalty phase of Perkins's trial was conducted, Penry v. Lynaugh, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), and its progeny were applicable, and evidence of mental retardation established a strong mitigating circumstance to be considered in determining the appropriate sentence.[4]
Additionally, the evidence presented at trial indicates that Perkins did not exhibit "significant" or "substantial" deficits in adaptive behavior before or after age 18. Perkins was able to have interpersonal relationships. Indeed, he was married for 10 years. He maintained a job as an electrician for a short period. Perkins did not present any evidence during the penalty phase of his trial to establish that he was mentally retarded. The record does not create any inference that Perkins is mentally retarded.[5] Because Perkins cannot establish the common requirements for mental retardation, we reject Perkins's contention that we must remand this cause for resentencing.
*457 The Virginia Supreme Court in Emmett v. Commonwealth, 264 Va. 364, 569 S.E.2d 39 (2002), confronted a factual situation similar to the one this Court confronts here. The Court affirmed Emmett's sentence of death, noting:
"The United States Supreme Court in Atkins v. Virginia, 536 U.S. 304, 321, 122 S.Ct. 2242, 2252, 153 L.Ed.2d 335 (2002), recently held that the execution of mentally retarded persons violates the Eighth Amendment's prohibition against cruel and unusual punishments. The Court did not establish an express standard for determining when an individual would be considered mentally retarded and left to the States the task of developing appropriate ways to enforce this constitutional restriction upon executions. Atkins, 536 U.S. at 317, 122 S.Ct. at 2250. The General Assembly has not had the opportunity to address this matter following the decision in Atkins.

"At trial, Emmett did not assert that he is mentally retarded. Moreover, our review of the record reveals nothing that even suggests that he is mentally retarded. Emmett received a high school equivalency diploma, attended a community college, and was regularly employed during his adult life prior to committing the murder in question. Accordingly, we conclude that Emmett does not suffer from any mental retardation that would constitutionally restrict the imposition of the death sentence in this case."
264 Va. at 376 n. 2, 569 S.E.2d at 47 n. 2.
Applying the plain-error standard of review, we hold that because, applying the most common definitions of mental retardation, we find no indication in the record that Perkins is mentally retarded, no reversible error occurred and the imposition of the death sentence in this case is not unconstitutional. Therefore, we affirm the judgment of the trial court sentencing Perkins to death.
AFFIRMED.
MOORE, C.J., and HOUSTON, SEE, LYONS, BROWN, HARWOOD,[*] and WOODALL, JJ., concur.
JOHNSTONE, J., concurs in the rationale in part and concurs in the judgment.
JOHNSTONE, Justice (concurring in the rationale in part and concurring in the judgment).
But for two exceptions, which do not affect the result, I concur in the main opinion. First, in my opinion, the reason we apply the plain-error standard of review on this particular remand is that Perkins did not contend at trial that mental retardation barred the imposition of a death sentence upon him. Second, I do not necessarily join in that part of footnote 1 urging the Alabama legislature "to expeditiously develop procedures for determining whether a capital defendant is mentally retarded and thus ineligible for execution." I neither encourage nor discourage such legislation. This Court is capable of rightly resolving these issues if and when they are presented, whatever the statutory scheme may be at the time.
NOTES
[1] Although the United States Supreme Court in Atkins barred the execution of mentally retarded defendants, the Court did not provide a definition of mental retardation or a procedure for evaluating whether a defendant's mental retardation is such as to prevent execution. Similar to that Court's approach in Ford v. Wainwright, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986), with regard to the development of safeguards to prevent the execution of the insane, the Supreme Court determined that the states are in the best position to develop "`appropriate ways to enforce the constitutional restriction'" on executing the mentally retarded. 536 U.S. at 317, 122 S.Ct. at 2250, quoting Ford, 477 U.S. at 416-17, 106 S.Ct. 2595.

Both Perkins and the State urge this Court to refrain from making policy decisions with regard to claims of mental retardation by capital defendants. We agree that we should so refrain. As the judicial branch of government, this Court can only interpret the law. We urge the Legislature to expeditiously develop procedures for determining whether a capital defendant is mentally retarded and thus ineligible for execution.
[2] See Atkins, 536 U.S. at 309 n. 3, 122 S.Ct. at 2245 n. 3.
[3] See Ariz.Rev.Stat. § 13-703.02(J)(2) (2001); Ark.Code Ann. § 5-4-618 (Michie 1993); Colo.Rev.Stat. § 18-1.3-1101(2) (2002); Conn. Gen.Stat. § 1-1g (2001); Fla. Stat. Ann. § 921.137(1) (West 2002); Ga.Code Ann. § 17-7-131(a)(3) (1997); Ind.Code. § 35-36-9-2 (1998); Kan. Stat. Ann. § 21-4623(e) (1995); Ky.Rev.Stat. Ann. § 532.130(2) (Michie 1999); Md. Ann.Code of 1957 art. 27 § 412(f)(3) (2001); Mo.Rev.Stat. § 565.030(6) (2001); Neb.Rev.Stat. § 28-105.01(3) (2000); N.M. Stat. Ann. § 31-20A-2.1(A) (Michie 2000); N.Y.Crim. Proc. Law § 400.27(12)(e) (McKinney 2002); N.C. Gen.Stat. § 15A-2005(a)(1)(a)(2001); S.D. Codified Laws § 23A-27A-26.2 (Michie 2002); Tenn.Code. Ann. § 39-13-203(a) (1997); Wash. Rev.Code § 10.95.030(2)(a)(2002).
[4] Penry has been abrogated by Atkins.
[5] Indeed, Perkins did not file an affidavit pursuant to the Retarded Defendant Act, § 15-24-3, Ala.Code 1975.
[*] Although Justice Harwood did not sit at oral argument, he has listened to the tape of oral argument.